[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Akron Bar Assn. v. Parkin,* Slip Opinion No. 2018-Ohio-5093.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-5093

AKRON BAR ASSOCIATION *v.* PARKIN.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Akron Bar Assn. v. Parkin,* Slip Opinion No. 2018-Ohio-5093.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to inform clients the lawyer does not maintain professional-liability insurance, failing to act with reasonable diligence in representing clients, and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Two-year suspension.*

(No. 2018-0542—Submitted May 22, 2018—Decided December 20, 2018.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2016-053.

_____

**Per Curiam.**

{¶ 1} Respondent, Tamara Dawn Parkin, of Akron, Ohio, Attorney Registration No. 0082454, was admitted to the practice of law in Ohio in 2007.

**{¶ 2}** In a July 2017 amended complaint, relator, Akron Bar Association, charged Parkin with committing ethical violations during her representation of eight separate clients. After a hearing, a three-member panel of the Board of Professional Conduct found that Parkin engaged in some of the charged misconduct, dismissed many of the alleged rule violations, and recommended that we suspend her from the practice of law for one year, order her to pay restitution, and impose a period of monitored probation upon her reinstatement. The board adopted the panel's findings of misconduct and most of the sanction but increased the recommended suspension to two years. Neither Parkin nor relator objected to the board's report and recommendation.

**{¶ 3}** Based on our review of the record, we adopt the board's findings of misconduct and recommended sanction.

### Misconduct

**{¶ 4}** This disciplinary matter commenced after the filing of eight grievances against Parkin. At the time of her misconduct, Parkin's legal practice focused primarily in the area of domestic relations. She is currently employed in a nonlegal position and registered as "inactive."

*Counts 1 and 2: the Salaam, Bartoletta, and Starkey matters*

**{¶ 5}** Relator decided against pursuing many of the misconduct allegations raised in grievances filed by Sieda Salaam and Jennifer Bartoletta, and the board later dismissed most of the misconduct allegations relating to a grievance filed by David Starkey. However, during the disciplinary proceedings, Parkin admitted that she did not maintain a client trust account when she represented any of the grievants involved in this disciplinary matter. Therefore, she admitted to accepting retainers or advanced fees from Salaam, Bartoletta, and Starkey but failing to deposit those funds into a separate client trust account. Parkin also admitted that she failed to obtain written acknowledgments from Bartoletta and Starkey regarding her lack or lapse of malpractice insurance.

**{¶ 6}** Based on this conduct, the board found that Parkin committed two violations of Prof.Cond.R. 1.4(c) (requiring a lawyer to inform the client if the lawyer does not maintain professional-liability insurance and obtain a signed acknowledgment of that notice from the client) and three violations of Prof.Cond.R. 1.15(a) (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer's own property).

*Count 3: the Christner matters*

**{¶ 7}** In January 2015, James Christner retained Parkin to represent him in multiple matters involving his ex-girlfriend, including a personal-property dispute in the Summit County Court of Common Pleas. Christner paid Parkin a $3,000 retainer and additional money for the filing fees relating to a counterclaim and cross-claim that he requested her to file in the property action. Parkin failed to deposit those funds into a client trust account or to properly notify Christner that she lacked malpractice insurance.

**{¶ 8}** Parkin successfully negotiated the resolution of one of Christner's matters. However, she never filed the counterclaim or cross-claim—later claiming that she had not received timely notice of the court's decision granting her leave to file the claims.

**{¶ 9}** The court scheduled trial in the property dispute for April 7, 2016. About a week before trial, Parkin moved for a continuance, but the court denied her request. Three days before trial, she filed a supplemental motion stating that a continuance was necessary because she had "ceased the practice of law and obtained employment with Hondros College of Business," where she was scheduled to teach a class on the trial date. At her disciplinary hearing, Parkin testified that when she filed the supplemental motion, she had obtained new employment and was not accepting new clients but continued to represent her existing clients. Parkin therefore admitted that when she filed her supplemental motion, she was continuing to practice law.

**{¶ 10}** The trial court rescheduled Christner's trial, but Christner learned about the continuance from the online docket—not from Parkin. At Parkin's disciplinary hearing, Christner testified that he had difficulties communicating with her. Specifically, he claimed that she failed to promptly respond to his attempts to reach her, keep him updated about the status of his case, inform him—or obtain his consent—before seeking to continue the trial, and notify him that she planned to terminate her law practice.

**{¶ 11}** Christner thereafter hired a new attorney and filed a grievance against Parkin. When Parkin attempted to contact Christner, he referred her to his new attorney and relator. Parkin, however, never made contact with Christner's new attorney, and she failed to return Christner's file and some personal items that he had given her for safekeeping during the representation.

**{¶ 12}** Based on this conduct, the board found that Parkin violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of the matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from a client), 1.4(c), 1.15(a), and 1.16(d) (as part of the termination of representation, requiring a lawyer to promptly deliver to the client all papers and property to which the client is entitled). In addition, because Parkin represented to a court that she had ceased practicing law—although she continued to represent existing clients—the board found that she violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

*Count 4: the Albright matter*

**{¶ 13}** In January 2015, Daniel Albright retained Parkin to represent him in a divorce action. At the time, Albright was serving in the United States Navy and stationed in Texas. Christner, who is Albright's father, paid Parkin a $3,000 retainer on behalf of his son with the understanding that Parkin would charge an

hourly rate against the retainer. Parkin failed to deposit those funds into a client trust account or to properly notify Albright that she lacked malpractice insurance.

{¶ 14} The court scheduled trial for September 24, 2015. According to Parkin, Albright had initially told her that he was unsure whether he could obtain leave to attend trial. However, on September 14, 2015, Albright sent Parkin an e-mail stating that he would be there. Parkin testified that because she did not carefully read Albright's e-mail, she requested the court to continue the trial on the basis that Albright had failed to obtain leave. The court granted her request, but Parkin failed to inform Albright. As a result, Albright drove from Texas to Akron to attend his divorce trial only to learn upon his arrival that the trial had been continued. Albright subsequently hired new counsel to complete his divorce.

{¶ 15} Based on this conduct, the board found that Parkin violated Prof.Cond.R. 1.3, 1.4(a)(3), 1.4(c), and 1.15(a).

*Count 5: the Giebel matter*

{¶ 16} In September 2015, Kristin Giebel retained Parkin to represent her in a divorce action. Giebel's father paid Parkin a $3,000 retainer and additional money for filing fees. Parkin failed to deposit those funds into a client trust account.

{¶ 17} At Parkin's disciplinary hearing, Giebel testified that when she hired Parkin, her financial situation was dire and therefore it was important that Parkin promptly file for divorce and obtain temporary orders for custody and financial support. Parkin filed the divorce complaint, but rather than paying the filing fee, she moved the court to waive fees based on Giebel's income level. The court denied Parkin's motion, although Parkin claims that she never received notice of the court's decision. Months later, the court dismissed Giebel's complaint based on her failure to timely pay the filing fee. According to Parkin, after she learned of the court's dismissal, she immediately paid the fee and reinstated the case.

{¶ 18} Giebel testified that she learned of the dismissal from her husband and that she thereafter terminated Parkin, requested a refund, and represented

herself in the proceedings. Parkin provided Giebel and her father with a final invoice indicating that Giebel was due $625 from the retainer, which Giebel's father did not dispute. Parkin claimed that she sent Giebel a cashier's check for the $625 refund, but Giebel and her father testified that they never received it. Although Parkin was aware that Giebel and her father claimed that they had not received the check, Parkin never attempted to verify with the bank whether the check had been cashed.

**{¶ 19}** Based on this conduct, the board found that Parkin violated Prof.Cond.R. 1.3, 1.15(a), and 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment).

*Count 7: the Mougey matter*

**{¶ 20}** In 2013, Adele Mougey paid Parkin a $3,000 retainer to represent her in a divorce. Parkin did not deposit any of those advanced fees into a client trust account, and although Parkin was covered by malpractice insurance when Mougey retained her, she failed to properly notify Mougey when her coverage ended. Mougey terminated Parkin's representation in 2016 because of communication problems. Although Mougey requested the return of her client file, Parkin failed to ensure that Mougey received the file.

**{¶ 21}** Based on this conduct, the board found that Parkin violated Prof.Cond.R. 1.4(c), 1.15(a), and 1.16(d).

*Count 8: the Davis matters*

**{¶ 22}** In September 2013, Derrick Davis retained Parkin and agreed to pay a $750 flat fee to obtain a dissolution of his marriage. Although Parkin believed that the flat fee was earned upon receipt, she failed to advise Davis in writing that if she did not complete the representation, he may be entitled to a refund of all or a part of the fee. In addition, although Parkin was covered by malpractice insurance when Davis retained her, she failed to properly notify him when she was no longer covered by the policy.

6

**{¶ 23}** Davis later requested Parkin to proceed with a divorce, and Parkin charged him a $3,000 retainer with the understanding that she would bill him an hourly rate against the retainer and give him credit for the $750 flat fee he had already paid. Parkin, however, failed to deposit any amount of the retainer into a client trust account.

**{¶ 24}** At Parkin's disciplinary hearing, Davis testified that he had problems communicating with Parkin and that near the end of the representation, she did not respond to his repeated attempts to reach her. As a result, in November 2016, he terminated Parkin and found new counsel. Davis claimed that after he hired new counsel, he learned for the first time that the court had scheduled a hearing for December 2, 2016. Davis also testified that he requested Parkin to return his file but she failed to do so.

**{¶ 25}** Based on this conduct, the board found that Parkin violated Prof.Cond.R. 1.4(a)(3), 1.4(a)(4), 1.4(c), 1.5(d)(3) (prohibiting a lawyer from charging a fee denominated as "earned upon receipt," "nonrefundable," or in any similar terms without simultaneously advising the client in writing that the client may be entitled to a refund of all or part of the fee if the lawyer does not complete the representation), 1.15(a), and 1.16(d).

**{¶ 26}** We agree with the board's findings of misconduct in the above counts. We also dismiss any alleged rule violations that were not dismissed by the panel or otherwise addressed by the board.

### Sanction

**{¶ 27}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

*Aggravating and mitigating factors*

**{¶ 28}** As aggravating factors, the board found that Parkin engaged in a pattern of misconduct, she committed multiple offenses, and her misconduct harmed her clients. *See* Gov.Bar R. V(13)(B)(3), (4), and (8). The board also determined that some of Parkin's misconduct involved a selfish motive—likely because she misled a court to obtain a continuance so she could teach a course, without the consent of her client. *See* Gov.Bar R. V(13)(B)(2). In addition, the board noted that although Parkin accepted responsibility for some of her misconduct, she failed to acknowledge the negative impact that it had on her clients. Gov.Bar R. V(13)(B)(7).

**{¶ 29}** The board found only one mitigating factor: Parkin lacks a disciplinary record. *See* Gov.Bar R. V(13)(C)(1).

*Applicable precedent*

**{¶ 30}** The panel and the board relied on four cases in recommending a sanction.

**{¶ 31}** In *Cincinnati Bar Assn. v. Hauck*, 129 Ohio St.3d 209, 2011-Ohio-3281, 951 N.E.2d 83, an attorney commingled personal, business, and client funds in one bank account over a six-year period, and he issued deceptive checks from that account giving the impression they were drawn on his client trust account, although they were actually from an account registered to a nonprofit entity that he had created to avoid tax garnishments. In addition, the attorney failed to notify clients that he had ceased carrying malpractice insurance. The attorney submitted significant mitigating evidence, but we concluded that his "complete disregard of the Rules of Professional Conduct requiring attorneys to maintain client funds separate from their own" and "his deceptive course of conduct" spanning multiple years warranted a one-year suspension, with six months conditionally stayed. *Id.* at ¶ 12-14.

**{¶ 32}** In *Cincinnati Bar Assn. v. Larson*, 124 Ohio St.3d 249, 2009-Ohio-6766, 921 N.E.2d 618, an attorney neglected three client matters, failed to promptly refund unearned fees to those clients, misled one of the clients about the status of her case, and failed to cooperate in two of the disciplinary investigations into his conduct. We suspended him for two years, with one year stayed on conditions.

**{¶ 33}** In *Akron Bar Assn. v. Bednarski*, 148 Ohio St.3d 615, 2017-Ohio-522, 71 N.E.3d 1093, and *Medina Cty. Bar Assn. v. Malynn*, 131 Ohio St.3d 377, 2012-Ohio-1293, 965 N.E.2d 299, we imposed two-year suspensions, with six months conditionally stayed. *Bednarski* involved an attorney who failed to maintain a client trust account and committed professional misconduct in two client matters, including neglecting one of the client's cases and failing to properly notify both clients that she lacked malpractice insurance. *Malynn* involved an attorney who neglected three client matters, engaged in dishonest conduct in one of those matters, failed to preserve the identity of client funds, and failed to initially cooperate in the ensuing disciplinary investigation.

**{¶ 34}** Here, citing the presence of multiple aggravating factors with little mitigating evidence and Parkin's violation of Prof.Cond.R. 8.4(c) for making a misrepresentation to a court, the panel recommended that we suspend Parkin for one year and, among other things, order her to make restitution to Giebel. The panel acknowledged that the above-cited precedent could support a longer suspension with some portion stayed. But because Parkin is no longer practicing law, the panel concluded that a stayed suspension was not appropriate.

**{¶ 35}** The board, however, recommends that we impose a two-year suspension, and we accept the board's recommendation. Parkin's misconduct is more varied than the misconduct in *Hauck*, *Larson*, *Bednarski*, and *Malynn*. Parkin not only lacked the basic organizational skills necessary to handle a legal practice— such as maintaining a client trust account, notifying clients that she lacked malpractice insurance, and ensuring the return of client files or property after

termination of her representation—but she also failed to diligently represent and communicate with multiple clients and made a misrepresentation to a court. Considering the number of grievants, rule violations, and aggravating factors, we conclude that a two-year suspension is the appropriate sanction.

## Conclusion

{¶ 36} Tamara Dawn Parkin is suspended from the practice of law for two years. Within 60 days of our disciplinary order, Parkin must make restitution in the amount of $625 to Kristin Giebel or submit evidence that Giebel negotiated the check that Parkin claims she previously issued to her. As a condition for any potential reinstatement, Parkin must demonstrate that she has completed ten hours of continuing legal education relating to client communication and law-office management, in addition to the requirements of Gov.Bar R. X. Upon any reinstatement and return to the practice of law, Parkin must submit to a two-year period of monitored probation in accordance with Gov.Bar R. V(21) to ensure that she has implemented appropriate law-office management policies and procedures to comply with the Rules of Professional Conduct. Costs are taxed to Parkin.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, FISCHER, and DEGENARO, JJ., concur.

KENNEDY, J., dissents, and would adopt the sanction recommended by the panel.

FRENCH and DEWINE, JJ., would suspend respondent from the practice of law in Ohio for one year but otherwise join the opinion and sanction imposed.

_____

Roetzel & Andress, L.P.A., and Karen D. Adinolfi; and Wayne M. Rice, Bar Counsel, for relator.

Tamara Dawn Parkin, pro se.

_____