**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Warren Cty. Bar Assn. v. Brenner,* **Slip Opinion No. 2020-Ohio-142.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-142

WARREN COUNTY BAR ASSOCIATION *v.* BRENNER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Warren Cty. Bar Assn. v. Brenner,***

**Slip Opinion No. 2020-Ohio-142.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to act with reasonable diligence in representing a client and failing to keep a client reasonably informed about the status of a matter—Conditionally stayed six-month suspension.*

(No. 2018-0822—Submitted May 8, 2019—Decided January 22, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-018.

_____

**Per Curiam.**

{¶ 1} Respondent, Andrew Jay Brenner, of Mason, Ohio, Attorney Registration No. 0085066, was admitted to the practice of law in Ohio in 2009.

{¶ 2} In a complaint certified to the Board of Professional Conduct on April 17, 2018, relator, Warren County Bar Association, charged Brenner with professional misconduct arising from his neglect of a legal matter, his failure to

reasonably communicate with his clients regarding that matter, and his failure to cooperate with relator's investigation. Brenner did not participate in relator's investigation and failed to answer the complaint. Consequently, his default was certified to this court.

{¶ 3} Although Brenner timely responded to our June 15, 2018 show-cause order, we imposed an interim default suspension on August 7, 2018. *Warren Cty. Bar Assn. v. Brenner*, 155 Ohio St.3d 1280, 2018-Ohio-3116, 121 N.E.3d 393. We also granted Brenner's motion for leave to answer the complaint and remanded the case to the board for further proceedings. 153 Ohio St.3d 1456, 2018-Ohio-3118, 103 N.E.3d 834. On remand, the board granted relator's motion to file an amended complaint and a panel of the board later considered the cause on the parties' consent-to-discipline agreement, *see* Gov.Bar R. V(16).

{¶ 4} The parties stipulated that in June 2016, Larry Buchanan, the principal for Security Self Storage, Inc. ("Security"), retained Brenner to represent the company in a small-claims case that Buchanan had filed in municipal court against one of Security's former tenants.

{¶ 5} Although Brenner participated in the litigation and discussed the defendant's discovery requests with Buchanan, he did not complete the discovery responses or produce them to the defendant. Brenner also failed to inform Buchanan that the defendant had filed motions to compel discovery and to deem its requests for admissions admitted. In the absence of responses to those motions from Brenner, the court granted the motions and ordered Security to provide its discovery responses by a set date.

{¶ 6} Because Brenner did not comply with the court's order, the defendant filed a motion to find Security in contempt, and the court set a date for the contempt hearing. Brenner did not appear at the contempt hearing and the court found Security in contempt of its discovery order, dismissed Security's complaint with prejudice, and entered a judgment of $10,092.50 plus $1,455 in attorney fees on a

counterclaim the defendant had filed. Brenner did not notify Buchanan of that judgment. Buchanan received notice of the judgment through other sources and paid it in full; he then filed a disciplinary grievance and also filed a malpractice action against Brenner in common pleas court. The court entered a default judgment against Brenner in the malpractice action on January 5, 2018.

{¶ 7} The parties stipulated and the board found that Brenner's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter), and 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information from a disciplinary authority). Relator agreed to dismiss six additional alleged rule violations.

{¶ 8} The parties stipulated that the only aggravating factor present is Brenner's failure to cooperate in the disciplinary process. *See* Gov.Bar R. V(13)(B)(5). As mitigating factors, the parties agreed that Brenner does not have a prior disciplinary record, did not act with a dishonest or selfish motive, did not personally gain from his misconduct, demonstrated a cooperative attitude in this proceeding during his interim suspension, and presented evidence of his good character or reputation. *See* Gov.Bar R. V(13)(C)(1), (2), (4), and (5). Although the parties acknowledged that Brenner suffers from anxiety and depression and entered into a two-year contract with the Ohio Lawyers Assistance Program ("OLAP") on November 5, 2018, they have not suggested that his disorders qualify as a mitigating factor pursuant to Gov.Bar R. V(13)(C)(7).

{¶ 9} The board recommends that we accept the parties' consent-to-discipline agreement and suspend Brenner from the practice of law for six months with the entire suspension stayed on the conditions recommended by the parties.

{¶ 10} In support of that sanction, the parties and the board cite *Dayton Bar Assn. v. Wilcoxson*, 153 Ohio St.3d 279, 2018-Ohio-2699, 104 N.E.3d 772. We suspended Wilcoxson's license on an interim basis as a result of his initial failure

to answer the disciplinary charges against him but later granted Wilcoxson's motion to terminate the interim suspension and remanded the case to the board. We ultimately found that Wilcoxson—like Brenner—neglected a client's legal matter, failed to keep the client informed about the status of that matter, and then failed to respond to the ensuing disciplinary investigation. But Wilcoxson notably also failed to take reasonably practicable steps to protect the client's interest upon his withdrawal from the representation. *Id.* at ¶ 7. Just one aggravating factor was present—Wilcoxson's failure to properly notify his client that he did not maintain professional-liability insurance. Mitigating factors included the absence of prior discipline, the absence of a dishonest or selfish motive, Wilcoxson's payment of restitution, and evidence of his good character and reputation. We adopted the parties' consent-to-discipline agreement and suspended Wilcoxson for six months, all stayed on the condition that he engage in no further misconduct.

{¶ 11} Based on the foregoing, we agree that Brenner's conduct violated Prof.Cond.R. 1.3, 1.4(a)(3), and 8.1(b) and that a six-month suspension, all stayed on the recommended conditions, is the appropriate sanction for that misconduct. We therefore accept the parties' consent-to-discipline agreement.

{¶ 12} Accordingly, Andrew Jay Brenner is suspended from the practice of law in Ohio for six months, with the entire suspension stayed on the conditions that he (1) comply with his November 5, 2018 OLAP contract, (2) follow any treatment and counseling recommendations arising from that contract, (3) make restitution to Security Self Storage, Inc., in the amount of $14,114.76 plus judgment interest accruing from January 5, 2018, (4) serve a one-year term of monitored probation in accordance with Gov.Bar R. V(21), and (5) engage in no further misconduct. If Brenner fails to comply with any condition of the stay, the stay will be lifted and he will serve the full six-month suspension. In addition, the interim default suspension imposed on August 7, 2018, is terminated. Before Brenner may resume the practice of law, however, he must apply for reinstatement and demonstrate that

he has fully complied with this court's August 7, 2018 interim-default-suspension order. Costs are taxed to Brenner.

Judgment accordingly.

O'CONNOR, C.J., and FRENCH, FISCHER, DONNELLY, and STEWART, JJ., concur.

FISCHER, J., concurs, with an opinion joined by DONNELLY, J.

KENNEDY, J., dissents, with an opinion joined by DEWINE, J.

_____

**FISCHER, J., concurring.**

{¶ 13} I join the majority opinion in this case accepting the parties' consent-to-discipline agreement. I write separately, however, to respectfully disagree with the viewpoint proposed in the dissenting opinion, which would reject the consent-to-discipline agreement based on the flawed conclusion that the Supreme Court Rules for the Government of the Bar require this court to impose specific conditions on any term of monitored probation in an attorney-discipline case.

{¶ 14} As I have stated in *Disciplinary Counsel v. Halligan*, ___ Ohio St.3d ___, 2019-Ohio-3748, ___ N.E.3d ___, ¶ 31-35 (Fischer, J., concurring), *Disciplinary Counsel v. Harmon*, ___ Ohio St.3d ___, 2019-Ohio-4171, ___ N.E.3d ___, ¶ 60 (Fischer, J., dissenting), and *Dayton Bar Assn. v. Sullivan*, ___ Ohio St.3d ___, 2020-Ohio-124, ____ N.E.3d ____, ¶ 40 (Fischer, J. concurring), neither the Supreme Court Rules for the Government of the Bar nor decades of this court's case law addressing attorney discipline supports such a requirement.

{¶ 15} While I agree that a more specific term of monitored probation can be useful and is in some cases necessary, *see, e.g., Disciplinary Counsel v. Bennett*, 146 Ohio St.3d 237, 2016-Ohio-3045, 54 N.E.3d 1232, ¶ 19, I disagree with the dissenting opinion's view that such specific conditions must be attached every time this court decides to order a sanction of monitored probation. Thus, I disagree with the dissenting opinion's conclusion that specific conditions must be attached to the

monitored probation in Andrew Jay Brenner's consent-to-discipline agreement. I join the majority opinion and agree that Brenner's consent-to-discipline agreement is appropriate under the Supreme Court Rules for the Government of the Bar and this court's precedent.

DONNELLY, J., concurs in the foregoing opinion.

───────────────

**KENNEDY, J., dissenting.**

{¶ 16} Because the Rules for the Government of the Bar require this court to impose specific conditions whenever we impose a period of probation and because neither the consent-to-discipline agreement in this case nor the report of the Board of Professional Conduct includes any conditions for the probation imposed on respondent, Andrew Jay Brenner, I would reject the consent-to-discipline agreement and remand this matter to the board for further proceedings. For these reasons, I dissent.

{¶ 17} Gov.Bar R. V(12)(A)(4) provides that when this court imposes a term suspension on an attorney, it may also impose "[p]robation for a period of time *upon conditions as the Supreme Court determines.*" (Emphasis added.) But rather than imposing those specific conditions itself, the majority relies on Gov.Bar R. V(21) to provide the conditions of probation by default. However, the probation procedures established in Gov.Bar R. V(21) were never intended to provide the tailored conditions of probation needed to protect the public from future misconduct while promoting the attorney's rehabilitation.

{¶ 18} Gov.Bar R. V(21)(A)(1), (3), (4), and (5) state that when this court has imposed probation, the relator is required to "[s]upervise the term and conditions of probation," appoint and receive reports from one or more monitoring attorneys, and investigate reports of a violation of the conditions of probation. Gov.Bar R. V(21)(B)(1) through (3) direct a monitoring attorney to "[m]onitor compliance by the respondent *with the conditions of probation imposed by the*

*Supreme Court*" (emphasis added), provide reports to the relator "regarding the status of the respondent and compliance with the conditions of probation," and "[i]mmediately report to the relator any violations by the respondent of the conditions of probation." And pursuant to Gov.Bar R. V(21)(D), probation may not be terminated unless all costs of the proceedings as ordered by this court have been paid, "the respondent has complied with the conditions of probation, and no formal disciplinary proceedings are pending against the respondent."

{¶ 19} Our conditions of probation are important because when a relator has probable cause to believe that a respondent has committed "a significant or continuing violation of the conditions of probation," Gov.Bar R. V(21)(E) directs the relator to "file a petition for the revocation of probation, reinstatement of any stayed suspension, and citation for contempt" with the director of the board. If a panel of the board, after a hearing, finds "clear and convincing evidence that the respondent is guilty of a significant or continuing violation of the conditions of probation," it reports the violation to this court. Gov.Bar R. V(21)(H).

{¶ 20} One purpose of imposing probation is to "provide the Court with a more immediate penalty if probation is violated." 1989 Staff Notes to Gov.Bar R. V. Therefore, when a panel files a certified report regarding a probation violation, we may issue "an order reinstating any period of suspension previously stayed by the Supreme Court, pending the entry of a final order by the Supreme Court," Gov.Bar R. V(21)(I). But reinstating a suspension that was previously stayed is not the sole penalty available to the court for a probation violation; after this court issues a show-cause order (and holds a hearing if any objections are filed), it "shall enter an order as it finds proper in accordance with [Gov.Bar R. V(17)]," Gov.Bar R. V(21)(K).

{¶ 21} Therefore, because it is incumbent on this court to impose specific conditions of probation, Gov.Bar R. V(21) provides little guidance for the day-to-day supervision, monitoring, and rehabilitation of the respondent. Gov.Bar R.

V(21)(C)(1) through (3) require the respondent to have in-person meetings with the monitoring attorney at least once a month during the first year of probation; to provide his monitoring attorney with a written release or waiver for use in verifying the respondent's compliance regarding medical, psychological, or other treatment; and to cooperate with the monitoring attorney's efforts to monitor the respondent's compliance with the conditions of probation. But these three generic requirements cannot be expected to establish clear goals and expectations of monitoring for all forms of misconduct. Instead, conditions tailored to the facts and circumstances of a respondent's misconduct must be imposed to protect the public and rehabilitate the respondent.

{¶ 22} This court's imposition of specific conditions of probation is therefore "essential to the scheme" of probation established by Gov.Bar R. V(21). *Disciplinary Counsel v. Halligan*, ___ Ohio St.3d ___, 2019-Ohio-3748, ___ N.E.3d ___, ¶ 43 (Kennedy, J., concurring in part and dissenting in part). The Rules for the Government of the Bar give this court—and only this court—the authority to impose those conditions, *id*. at ¶ 42, and the "failure to attach conditions to probation is more than a missed opportunity to set the criteria and goals for professional redemption, it is an abdication of our duty under the Rules for the Government of the Bar," *id*. at ¶ 41. When this court does not provide guidance to the relator, the respondent, the monitoring attorney, and the board as to the conditions of probation—conditions specifically designed by this court to protect the public and rehabilitate the respondent—it undermines the effectiveness of the probation scheme established by Gov.Bar R. V(21).

{¶ 23} For these reasons, "[a] term of probation should have sufficient conditions tied to a respondent's violations to protect the public from further violations of the Rules of Professional Conduct" while also providing supervisory activities "tailored to benefit a respondent." *Halligan* at ¶ 45 (Kennedy, J., concurring in part and dissenting in part).

{¶ 24} In a consent-to-discipline case, the parties have the opportunity to design the most appropriate conditions based on the facts and circumstances of the case. The relator, which must supervise the term of probation, and the respondent, who must serve it, share an interest in ensuring that the conditions of probation promote the disciplined attorney's rehabilitation while protecting the public and making good use of the time and energy of the relator, the respondent, and the monitoring attorney. When the relator and the respondent enter into a consent-to-discipline agreement stipulating that the sanction for the respondent's misconduct should include monitored probation, the parties need to include conditions of probation. Conditions are essential to monitored probation and must be set by this court when probation is imposed, but neither the board nor this court has authority to modify a consent-to-discipline agreement to add conditions that the parties omitted, *see* Gov.Bar R. V(16)(B) and (C); Gov.Bar R. V(17)(D); *see also* Gov.Bar R. V(12)(I) ("If applicable, the panel shall include in its report any conditions of probation"). Therefore, consent-to-discipline agreements that include monitored probation but do not specify its conditions should be rejected by the board or, failing that, should be rejected by this court.

{¶ 25} In this case, neither the consent-to-discipline agreement nor the board's report includes any conditions of probation. I am therefore constrained to reject the consent-to-discipline agreement, and I would remand this matter to the board for further proceedings that would permit the imposition of specific conditions for the one-year term of monitored probation. Appropriate conditions related to overseeing respondent's office-management practices include the following: (1) respondent shall meet in person with his monitoring attorney on a monthly basis as required by Gov.Bar R. V(21)(C)(1), (2) respondent shall provide his monitoring attorney with a written release or waiver for use in verifying compliance regarding medical, psychological, or other treatment as required by Gov.Bar R. V(21)(C)(2), (3) respondent shall cooperate and work with the monitor,

who shall act as a mentor and provide guidance to respondent regarding the proper operation and management of a law practice, (4) respondent, with the relator or monitoring attorney, shall design a comprehensive plan to ensure that he is reasonably diligent in the representation of his clients; in the event respondent cannot act with reasonable diligence in representing his clients, the relator or monitoring attorney may limit the number of active cases respondent may maintain, (5) respondent shall maintain an active-case list or a docketing system and shall give the monitoring attorney an inventory of active cases each month, (6) respondent shall give the monitoring attorney access to nonconfidential client materials and files, ledgers, and account statements as needed to allow the monitoring attorney to review respondent's active cases to ensure his compliance with the Rules of Professional Conduct, s*ee Allen Cty. Bar Assn. v. Williams*, 95 Ohio St.3d 160, 2002-Ohio-2006, 766 N.E.2d 973, ¶ 16, and (7) prior to the termination of probation, as part of his continuing-legal-education requirements under Gov.Bar R. X, respondent shall complete at least six hours of continuing-legal-education courses on law-office management and operations.

{¶ 26} In some cases, making the stay of a suspension subject to conditions is a sufficient method to compel compliance with our disciplinary order and the additional sanction of monitored probation is not necessary. (The Rules for the Government of the Bar do not provide any specific procedure for the relator or a monitoring attorney to supervise the conditions of a stayed suspension.) However, since the majority accepts the consent-to-discipline agreement, and given the way the agreement in this particular case is structured, we should also include the following requirements agreed to by the parties as conditions of probation rather than conditions of the stay: (1) respondent shall comply with his November 5, 2018 contract with the Ohio Lawyers Assistance Program, (2) respondent shall follow any treatment and counseling recommendations arising from that contract, (3) respondent shall make restitution to Security Self Storage, Inc., in the amount of

$14,114.76 plus judgment interest accruing from January 5, 2018, before respondent may apply to terminate probation, and (4) respondent shall engage in no further misconduct.

{¶ 27} "An effective attorney-probation system—one that follows the Rules for the Government of the Bar—requires the considered input of this court in establishing the conditions of probation." *Halligan*, ___ Ohio St.3d ___, 2019-Ohio-3748, ___ N.E.3d ___, at ¶ 47 (Kennedy, J., concurring in part and dissenting in part). Because no specific conditions are imposed for respondent's term of probation, I dissent from the court's decision today.

DEWINE, J., concurs in the foregoing opinion.

_____

Kenneth E. Peller, Bar Counsel, and Dwight A. Packard II, for relator.

Reminger Co., L.P.A., and Ian D. Mitchell, for respondent.

_____