**DISCIPLINARY COUNSEL *v*. WINEMAN**.

**[Cite as *Disciplinary Counsel v. Wineman*,**

**121 Ohio St.3d 614, 2009-Ohio-2005.]**

*Attorney misconduct, including engaging in conduct prejudicial to the administration of justice — Two-year suspension, stayed on conditions.*

(No. 2008-2405 — Submitted February 4, 2009 — Decided May 6, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 07-076.

_____

**Per Curiam**.

{¶ 1}   Respondent, Reese Mark Wineman of Norwalk, Ohio, Attorney Registration No. 0032268, was admitted to the practice of law in Ohio in 1976. The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for two years, staying the entire suspension on conditions, based on findings that he attempted to represent clients, both in and out of the courtroom, while intoxicated.  We agree that respondent committed professional misconduct as found by the board and that a two-year suspension, conditionally stayed, is appropriate.

{¶ 2}   Relator, Disciplinary Counsel, charged respondent in a two-count complaint with violations of the Disciplinary Rules of the Code of Professional Responsibility and the Rules of Professional Conduct.[1]   A panel of board members heard the case, reviewed the parties' extensive stipulations, and made findings of fact and conclusions of law and recommended the two-year

_____

1. Relator charged respondent with violations of the applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Code of Professional Responsibility.

conditionally stayed suspension. The board adopted the panel's findings of misconduct and recommendation.

**Misconduct**

*Count I — The August 3, 2006 Proceedings*

**{¶ 3}** On the morning of August 3, 2006, respondent was scheduled to appear on behalf of clients in two different proceedings before the Huron County Common Pleas Court. When he arrived at the courthouse, a sheriff's deputy handling security suspected from respondent's appearance and breath that he was intoxicated. Opposing counsel in one of respondent's cases came to the same conclusion after trying to discuss the case with him. The lawyer reported his suspicions to a magistrate, and the magistrate confirmed the lawyer's impressions with the deputy sheriff.

**{¶ 4}** The magistrate reported respondent's condition to the common pleas judge, who brought respondent into his chambers and confronted him. The judge also observed the telltale signs of intoxication, including respondent's slurred speech and the odor of alcohol. Respondent acknowledged his intoxicated state, apologizing to the judge and conceding that he needed help. The judge forbade respondent to participate in the two hearings scheduled for that day, and respondent agreed to continuances at his cost.

**{¶ 5}** Respondent stipulated and the panel and board found the evidence clear and convincing that respondent's conduct during the proceedings on August 3, 2006, violated DR 1-102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice) and 1-102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on his fitness to practice law). We accept these findings of misconduct.

*Count II — The Sandifer Case*

**{¶ 6}** In April 2007, Michael Sandifer hired respondent to defend him against a criminal charge in the Norwalk Municipal Court. Sandifer met that

month with respondent at his office, expecting to discuss the case. He ended up leaving the meeting abruptly because respondent was obviously intoxicated.

{¶ 7} Respondent also appeared under the influence of alcohol at one of Sandifer's pretrial hearings. On May 9, 2007, respondent entered the municipal courtroom, walked by Sandifer without acknowledging his presence, and entered the judge's chambers. In chambers, the judge and the assistant law director prosecuting the case detected the odor of alcohol on him. The judge warned respondent that he would declare a mistrial and find respondent in contempt if he appeared at trial while intoxicated.

{¶ 8} Respondent did not heed the judge's warning. During a lunch break on the day of trial, Sandifer noticed that his attorney's eyes were bloodshot and his speech was slurred and that he again smelled of alcohol. Respondent was unresponsive to Sandifer's request that he ask specific questions of a witness and instead repeatedly asked his client to remind him of the facts in the case. Sandifer feared that respondent was again under the influence of alcohol.

{¶ 9} A jury found Sandifer guilty as charged. In June 2007, Sandifer discharged respondent, asked for a refund of the $750 fee, and hired a new lawyer. In part because of respondent's possible intoxication during trial, the judge vacated the conviction, and Sandifer was convicted of a lesser crime. In August 2007, after reviewing a draft of relator's complaint, respondent returned Sandifer's $750.

{¶ 10} Respondent stipulated and the panel and board found the evidence clear and convincing that respondent's conduct in the Sandifer case violated Prof.Cond.R. 1.1 (a lawyer shall represent a client competently, with the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation), 8.4(d) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice), and 8.4(h) (a lawyer shall not engage in conduct

that adversely reflects on his fitness to practice law). We accept these findings of misconduct.

**Sanction**

{¶ 11} When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties violated by the lawyer in question and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818 ¶ 16. Before making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Lake Cty. Bar Assn. v. Troy*, 121 Ohio St.3d 51, 2009-Ohio-502, 901 N.E.2d 809, ¶ 11.

{¶ 12} We have already identified respondent's breaches of duties owed to his client, the legal profession, and the judicial system. Regarding sanctions in similar cases, we find *Disciplinary Counsel v. Scurry*, 115 Ohio St.3d 201, 2007-Ohio-4796, 874 N.E.2d 521, instructive. In that case, we suspended a lawyer's license for two years but stayed the suspension on conditions that the lawyer receive assistance in his recovery from alcohol dependence. Like respondent, Scurry also had attempted to conduct his professional affairs while intoxicated, including having meetings with clients. Although Scurry did not appear in court under the influence of alcohol, he did contact a local court on numerous occasions while inebriated.

{¶ 13} In respondent's case, finding no aggravating factors, the board weighed four mitigating factors in his favor. Respondent has no prior disciplinary record, his misconduct was not motivated by self-interest or dishonesty, he has cooperated fully in the disciplinary process, and he has offered persuasive evidence of his professional competence, good character, and reputation apart from the underlying misconduct. See BCGD Proc.Reg. 10(B)(2)(a), (b), (d), and

(e). Similar mitigating evidence was presented in *Scurry*, although that lawyer had a history of professional discipline related to alcoholism. 115 Ohio St.3d 201, 2007-Ohio-4796, 874 N.E.2d 521, ¶ 14. Moreover, both here and in *Scurry*, the lawyers satisfied BCGD Proc.Reg. 10(B)(2)(g)(i) through (iv) (affording mitigating effect upon a showing that (1) a lawyer has been diagnosed with alcoholism by a qualified health-care professional, (2) the alcoholism contributed to cause the misconduct, (3) he has successfully completed an approved treatment program, and (4) a qualified health-care professional has released him to return, under specified conditions if necessary, to the competent, ethical, and professional practice of law).

{¶ 14} Respondent has a long history of alcohol abuse that includes unsuccessful treatment regimes. Paul Caimi, associate director of the Ohio Lawyers Assistance Program ("OLAP"), testified about respondent's assessment as being alcohol dependent, a condition that obviously led to his intoxication on August 3, 2006, and in the Sandifer case. Respondent originally entered into an OLAP recovery contract on June 9, 2007.

{¶ 15} Respondent complied with the terms of that contract to the extent of regularly attending group counseling meetings and getting a sponsor. Because he had no medical insurance and felt he could not leave his practice, however, he did not attend a recommended inpatient treatment program. He relapsed on July 4, 2007, by having an alcoholic beverage. Respondent reported the relapse to Caimi and has maintained sobriety ever since.

{¶ 16} Notwithstanding his sobriety, respondent's failure to enter an inpatient treatment facility prompted Caimi in February 2008 to formally terminate his contract with OLAP for noncompliance. But in May 2008, respondent reconnected with Caimi and signed another recovery contract. At the time of the July 21, 2008 panel hearing, respondent had recently obtained an assessment from a psychiatrist who specializes in chemical dependence. He was

waiting to receive the doctor's recommendations for a treatment plan, which Caimi understood would this time allow outpatient treatment. Caimi assured the panel that respondent was in compliance with his most recent OLAP contract.

{¶ 17} The panel and board fully appreciated the threat that respondent's unmanaged alcohol dependence posed to the public. The panel stated:

{¶ 18} "When determining the sanction in this case, the Panel is faced with two incidents where Respondent consumed alcohol and attempted to represent clients while under the influence of alcohol. While the record is replete with testimony of Respondent's relapses from sobriety and failed treatment history, the Panel determined that ultimately the sanction must reflect the appropriate punishment for the violations set forth above. This is not to say that the Panel does not recognize the potential harm that could have occurred by Respondent's altered state while representing clients. Therefore, considering Respondent's long history of practice without a disciplinary record as mitigating and in view of his cooperation in the disciplinary process, the Panel recommends that Respondent be suspended from the practice of law for a period of twenty-four months, with the period of suspension stayed subject to * * * conditions."

{¶ 19} The board adopted the panel's recommended conditions, which are aimed at assisting respondent's recovery and ensuring the public's protection. These conditions are as follows:

{¶ 20} 1. Respondent must comply with the terms of his OLAP contract, including any inpatient or outpatient treatment program determined by OLAP;

{¶ 21} 2. Respondent must complete a two-year probation in accordance with Gov.Bar R.V(9), including quarterly reports to a monitoring attorney appointed by relator as to his compliance with OLAP treatment recommendations and his progress; and

{¶ 22} 3. Respondent must not commit any further misconduct.

{¶ 23} We accept the board's recommendation. Respondent is therefore suspended from the practice of law in Ohio for two years. The suspension is stayed on the listed conditions. If respondent violates the terms of the stay or his probation, the stay will be lifted, and his license to practice law will be suspended for the entire two years. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Philip A. King, Assistant Disciplinary Counsel, for relator.

Christensen, Christensen, Donchatz, Kettlewell & Owens and Kenneth R. Donchatz, for respondent.

_____