[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Gernert*, Slip Opinion No. 2024-Ohio-1946.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-1946

DISCIPLINARY COUNSEL *v*. GERNERT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Gernert*, Slip Opinion No. 2024-Ohio-1946.]

*Attorneys—Misconduct—Violations of Rules of Professional Conduct—Conditionally stayed two-year suspension.*

(No. 2024-0173—Submitted March 12, 2024—Decided May 23, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2023-013.

_____

**Per Curiam.**

{¶ 1} Respondent, Brian Nicholas Gernert, of Bucyrus, Ohio, Attorney Registration No. 0089507, was admitted to the practice of law in Ohio in 2012. On October 8, 2021, Gernert was appointed as the interim law director for the city of Bucyrus. After winning the primary election in May 2023, he ran unopposed and was elected as the Bucyrus law director in November 2023.

**{¶ 2}** In a June 2023 complaint, relator, disciplinary counsel, charged Gernert with two ethical violations arising from his use of alcohol, which had resulted in his conviction on two separate counts of operating a vehicle while intoxicated ("OVI") as well as two parole violations. Gernert's alcohol use also had resulted in the dismissal of a driving-under-suspension case for which Gernert served as the prosecutor. In his answer to relator's complaint, Gernert admitted every allegation.

**{¶ 3}** The parties submitted stipulations of fact, misconduct, and aggravating and mitigating factors as well as 21 stipulated exhibits, and the matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. Based on the stipulations and Gernert's testimony, the panel found that Gernert committed the charged misconduct. The panel recommended that Gernert be suspended from the practice of law for two years, fully stayed on conditions intended to foster his recovery and sobriety. The board adopted the panel's report and recommendation, and no objections have been filed. After a thorough review of the record and our precedent, we adopt the board's findings of misconduct and the recommended sanction.

## MISCONDUCT

### *First OVI Offense—May 2022*

**{¶ 4}** On May 4, 2022, Gernert was driving his orange Honda SUV in Bucyrus. Around 10:10 p.m., another driver called 9-1-1 to report a possible intoxicated driver in an orange Honda SUV traveling westbound on West Mansfield Street in Bucyrus. The caller observed Gernert's vehicle veering off Holmes Center Road into a ditch, striking a utility pole, and then driving away from the scene. The caller followed Gernert's vehicle until a Crawford County sheriff's deputy located it and initiated a traffic stop near Bucyrus High School.

**{¶ 5}** As the deputy approached Gernert's vehicle, he noticed that it had sustained heavy damage to the passenger side. The deputy spoke with Gernert, who

was the only occupant in the vehicle, and smelled the odor of alcohol emanating from inside the vehicle. After having Gernert exit the vehicle, the deputy asked how much Gernert had had to drink. Gernert replied, "A drink or two." The deputy attempted to have Gernert perform field sobriety tests; however, Gernert lost his balance during the horizontal-gaze nystagmus test. Gernert was arrested on suspicion of OVI.

{¶ 6} After the deputy secured Gernert in the back of a cruiser, he and a second deputy observed an open beer can in the center console and a bottle of Crown Royal Black on the driver's-side floorboard. They also noticed a large chunk of wood, presumably from the utility pole, protruding from the passenger's-side door and fender. The passenger's-side mirror was missing from the vehicle, and the adjacent window was shattered. A third deputy found a black Crown Royal bag and the broken passenger's-side mirror from Gernert's vehicle at the scene of the crash on Holmes Center Road.

{¶ 7} The deputy who initiated the stop transported Gernert to the Crawford County Jail, where he offered Gernert the opportunity to submit to a breathalyzer test. Gernert refused. Gernert was charged with a first-degree misdemeanor OVI under R.C. 4511.19(A)(1)(a) and a first-degree misdemeanor refusal to submit to chemical testing under R.C. 4511.19(A)(2).

{¶ 8} Due to Gernert's position as the interim city law director, a special prosecutor and visiting judge were appointed to his case. On August 2, 2022, Gernert pleaded guilty to one count of OVI in violation of R.C. 4511.19(A)(1)(a), and the prosecutor dismissed the other charge. The visiting judge sentenced Gernert to 180 days in jail with 177 days suspended and two years of community control and ordered him to pay a fine and court costs. As conditions of his community control, the court prohibited Gernert from consuming or possessing any alcoholic beverages and required him to participate in the Ohio Lawyers Assistance Program ("OLAP"). Gernert's driver's license was also administratively

suspended for one year. However, the court granted him limited driving privileges to drive to and from work and medical, court, and counseling appointments.

### Second OVI Offense—September 2022

{¶ 9} On September 2, 2022, at approximately 11:30 p.m., an Ohio State Highway Patrol trooper observed Gernert driving a Jeep northbound on Spring Street in Bucyrus. While following the Jeep, the trooper ran its license-plate number through the Law Enforcement Automated Data System ("LEADS"). He learned that Gernert owned the Jeep and that he had an active driver's-license suspension with limited driving privileges. The trooper continued to follow the Jeep and observed it weaving in its lane and driving on the solid white line to the right. He activated his overhead emergency lights and pulled Gernert over to the side of the road.

{¶ 10} When the trooper approached the vehicle, he noticed Gernert in the driver's seat and confirmed that his appearance matched the photo of the registered owner that he had seen on LEADS. The trooper immediately noticed a strong odor of alcohol coming from the vehicle and that Gernert's speech was heavily slurred. In response to the trooper's request that Gernert exit his vehicle, Gernert shut the driver's-side window and stared straight ahead. The trooper knocked on the window and instructed Gernert to exit the vehicle, but Gernert opened the window slightly and shook his head to indicate that he would not comply. When the trooper asked how much he had had to drink that night, Gernert told him, "None." And when asked again to exit the vehicle, Gernert said, "Call my parents."

{¶ 11} After the trooper informed Gernert that he would be charged with obstructing official business if he did not exit the vehicle, Gernert opened the door and swung his legs out. He was not wearing any shoes, and he braced himself against the car frame to exit the vehicle. Due to Gernert's unsteadiness, the trooper assisted him back to the patrol car, where he administered the horizontal-gaze

nystagmus test, which Gernert failed. Gernert refused to complete any additional tests.

{¶ 12} Gernert was arrested on suspicion of OVI and taken to the Crawford County Jail. There, he refused to submit to a breathalyzer test. He was charged with three first-degree misdemeanor offenses—OVI under R.C. 4511.19(A)(1)(a), refusal to submit to chemical testing under R.C. 4511.19(A)(2), and driving under suspension under R.C. 4510.14(A)—and a minor-misdemeanor seatbelt infraction. He was also charged with a probation violation in his May 2022 case. Again, due to Gernert's position as the interim city law director, a special prosecutor and visiting judge were appointed to the case.

{¶ 13} After five days in custody, Gernert was arraigned and released on his own recognizance. Upon his release, he was required to wear a Secure Continuous Remote Alcohol Monitor ("SCRAM") ankle bracelet that would alert the probation department of any alcohol consumption.

{¶ 14} On November 1, 2022, Gernert pleaded guilty to the OVI offense and the prosecutor dismissed the remaining charges. Gernert also admitted that his conduct violated the terms of his community-control conditions imposed in his May 2022 OVI case. The visiting judge sentenced Gernert to 180 days in jail with 157 days suspended and credit for five days served. He also ordered Gernert to serve 18 days of house arrest and two years of community control and to pay a fine and court costs. Gernert's probation in his May 2022 case was extended to November 1, 2024, and his driver's license was administratively suspended for one year. Although Gernert was eligible for limited driving privileges, he did not apply for them and did not drive during that suspension.

### *Failure to Prosecute Crawford County Municipal-Court Case*

{¶ 15} In his capacity as the interim city law director, Gernert was scheduled to prosecute a driving-under-suspension case before the Crawford County Municipal Court on May 19, 2023. Approximately ten minutes before the

trial was scheduled to start, Gernert telephoned the court clerk. The clerk had difficulty understanding Gernert because his speech was heavily slurred, but the clerk surmised that Gernert wanted to dismiss the charges based on his indication that he would "call off" the police officer in the case. The clerk informed the magistrate presiding over the trial of Gernert's call. The magistrate interpreted Gernert's call as a request for a continuance, denied the request, and dismissed the case for failure to prosecute.

{¶ 16} Later that day, Gernert's probation officer made an unannounced visit to Gernert's home and found him "highly intoxicated." Gernert admitted to having consumed alcohol, and there was a half-empty bottle of Wild Turkey present. As a result, Gernert was charged with a probation violation and ordered to wear a SCRAM device. He pleaded guilty to those violations, and the court extended his probation to November 1, 2025.

{¶ 17} Gernert relapsed again in September 2023. The following month, he freely reported the relapse to his probation officer and asked to be placed on a SCRAM monitor for a year while he participated in Alcoholics Anonymous ("AA") and counseling. At his disciplinary hearing, Gernert testified that the SCRAM device was placed on his ankle on October 13, 2023, approximately six weeks earlier, and that he had not consumed any alcohol since that time.

### Findings of Misconduct

{¶ 18} The parties stipulated and the board found by clear and convincing evidence that Gernert's conduct violated Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). We adopt the board's finding that Gernert's conduct violated Prof.Cond.R. 8.4(d).

{¶ 19} A hearing panel must determine by clear and convincing evidence that an attorney has committed misconduct before a sanction may be imposed,

Gov.Bar R. V(12)(I), and in *Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21, we explained that in order to find a violation of Prof.Cond.R. 8.4(h), the evidence must demonstrate that either (1) the lawyer engaged in misconduct that adversely reflects on the lawyer's fitness to practice law even though that conduct is not specifically prohibited by the rules or (2) the conduct giving rise to a specific rule violation is so egregious as to warrant an additional finding that it adversely reflects on the lawyer's fitness to practice law. Although not specifically found by the board and although not specifically prohibited by another disciplinary rule, we find that Gernert's two OVI convictions and his failure, in his role as interim city law director, to prosecute a driving-under-suspension case due to his own intoxication adversely reflect on his fitness to practice law. We therefore adopt the board's finding that Gernert violated Prof.Cond.R. 8.4(h).

## SANCTION

{¶ 20} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

### *Aggravating and Mitigating Factors*

{¶ 21} In this case, the parties have stipulated and the board has found that two aggravating factors are present—a pattern of misconduct and multiple offenses. *See* Gov.Bar R. V(13)(B)(3) and (4). The parties also have stipulated and the board has found that five mitigating factors are present: Gernert (1) has no prior discipline, (2) made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings, (3) submitted evidence of his good character and reputation, (4) had other penalties or sanctions imposed for his misconduct, and (5) has engaged in other interim rehabilitation. *See* Gov.Bar R. V(13)(C)(1), (4), (5), (6), and (8).

{¶ 22} Gernert submitted nine character letters from attorneys, judges, and the mayor of Bucyrus. The authors of those letters attested to Gernert's diligence, honesty, and professionalism. They also expressed their belief that with treatment, Gernert would continue to be a productive member of Bucyrus's small legal community. Given his status as an elected official, Gernert issued a public apology in a local newspaper, taking full responsibility for his conduct and expressing his commitment to his treatment for his alcoholism.

{¶ 23} Following his first OVI offense in May 2022, Gernert voluntarily contacted OLAP and was referred to a substance-abuse treatment center.[1] He completed a 30-day inpatient treatment program, followed by an intensive outpatient treatment program (with sessions four times a week for three hours), then regular outpatient therapy for one and a half hours once a week. Gernert testified that he plans to participate in his outpatient therapy "in perpetuity."

{¶ 24} Following his May 2023 relapse, Gernert wore a SCRAM device through July and completed another six to eight weeks of intensive outpatient therapy before resuming regular outpatient therapy. He also attended three AA meetings a week from May through September 2023. Throughout that time, Gernert checked in with and forwarded his treatment records to OLAP. Gernert testified that in addition to receiving a monthly shot to ease his alcohol cravings, he takes a low-dose antidepressant and sees a psychiatrist once a month to discuss stress management.

{¶ 25} Although there was substantial evidence regarding Gernert's alcoholism and some evidence regarding his depression and stressors, the board noted that he did not offer a diagnosis of a disorder by a qualified healthcare professional. Therefore, the board found that the parties did not submit sufficient

---

1. The board found Gernert's testimony that he was unaware of the option to sign a contract with OLAP until February 2023 to be credible. Therefore, the board did not attribute any aggravating effect to his delay in entering into an OLAP contract.

evidence to establish the existence of a mitigating substance-use or mental disorder under Gov.Bar R. V(13)(C)(7).

### The Recommended Sanction and Precedent

{¶ 26} Relator recommended that Gernert be suspended from the practice of law for two years, fully stayed on conditions intended to assist his recovery from alcohol dependence and to protect the public. Gernert did not suggest a particular sanction but acknowledged that a stayed suspension was appropriate.

{¶ 27} In determining the appropriate sanction to recommend for Gernert's misconduct, the board considered nine cases in which we sanctioned attorneys and judges for misconduct that occurred while they were under the influence of alcohol or drugs. In two of those cases—*Disciplinary Counsel v. Connor*, 105 Ohio St.3d 100, 2004-Ohio-6902, 822 N.E.2d 1235, and *Cleveland Metro. Bar Assn. v. Strauss*, 165 Ohio St.3d 45, 2021-Ohio-1263, 175 N.E.3d 516—we imposed fully stayed suspensions of one year or less.

{¶ 28} In *Connor*, a judge—who had previously been publicly remanded for an alcohol-related offense—was convicted of driving under the influence of alcohol in another state. Following that conviction, Connor entered into an OLAP contract, fully complied with that contract, and dedicated himself to recovery. He completed an inpatient treatment program, strictly complied with his after-care program, and had a sustained period of abstinence prior to his disciplinary hearing. Noting Connor's commitment to his recovery and the fact that his performance as a judge "remain[ed] above reproach," we found that he posed no risk to the public or the good of the judicial system. *Id*. at ¶ 20. We imposed a conditionally stayed six-month suspension for Connor's misconduct. *Id*. at ¶ 21.

{¶ 29} In *Strauss*, the attorney drove while intoxicated, struck a police vehicle that was parked at the scene of another accident, and continued driving. He later crashed into the median, abandoned his vehicle, and fled on foot. Strauss pleaded no contest to six misdemeanor offenses arising out of that incident,

including OVI, resisting arrest, leaving the scene of an accident, and unsafe operation of a vehicle in the vicinity of an emergency vehicle. Mitigating factors consisted of Strauss's clean disciplinary record, his full cooperation in the disciplinary proceedings, and the imposition of criminal penalties for his misconduct; no aggravating factors were found. *Id.* at ¶ 10-11. Notably, an assessment completed as part of Strauss's criminal sanction found that he had no substance-use disorder. *Id.* at ¶ 16. We imposed a conditionally stayed one-year suspension for Strauss's misconduct. *Id.* at ¶ 18.

{¶ 30} The board also considered four cases in which we imposed conditionally stayed two-year suspensions on attorneys who had engaged in deceit or client-related misconduct while under the influence of drugs or alcohol: *Disciplinary Counsel v. Ault*, 110 Ohio St.3d 207, 2006-Ohio-4247, 852 N.E.2d 727; *Disciplinary Counsel v. Wineman*, 121 Ohio St.3d 614, 2009-Ohio-2005, 906 N.E.2d 1117; *Disciplinary Counsel v. Scurry*, 115 Ohio St.3d 201, 2007-Ohio-4796, 874 N.E.2d 521; and *Stark Cty. Bar Assn. v. Kelley*, 164 Ohio St.3d 443, 2021-Ohio-770, 173 N.E.3d 471.

{¶ 31} Ault, a judge, was convicted of two misdemeanor offenses for deceiving multiple doctors into prescribing narcotics to satisfy his addiction to painkillers, but there was no evidence that Ault's addiction had compromised his professional performance. At the time of Ault's disciplinary hearing, he had successfully completed a two-year OLAP contract and shown a sustained commitment to his recovery. *Ault* at ¶ 17. We imposed a two-year suspension for Ault's misconduct and stayed that suspension on conditions designed to support his recovery—namely, that he enter into a new two-year OLAP contract and serve a two-year period of monitored probation. *Id.* at ¶ 25.

{¶ 32} In *Wineman* and *Scurry* we imposed two-year suspensions stayed on similar conditions on attorneys who handled—or attempted to handle—their professional affairs while intoxicated. Wineman attempted to represent two clients

in court while he was intoxicated. He also met with a third client while obviously intoxicated and then represented that client at a municipal-court pretrial hearing and jury trial while he appeared to be under the influence of alcohol. Although the client was convicted of the charged offense, the court later vacated that conviction, in part because of Wineman's possible intoxication during trial. Like Gernert, Wineman was found to have violated rules prohibiting attorneys from engaging in conduct that is prejudicial to the administration of justice and conduct that adversely reflected on the lawyer's fitness to practice law. *See Wineman* at ¶ 5, 10. Unlike Gernert, however, Wineman was found to have failed to provide competent representation to one of his clients. *See id.* at ¶ 10.

**{¶ 33}** Scurry did not appear in court while under the influence of alcohol like Wineman, but he repeatedly met with clients, telephoned law-enforcement offices, and called the Madison County Municipal Court all while intoxicated to the point that he was incoherent. Like Gernert, Scurry was found to have engaged in multiple instances of conduct that adversely reflected on his fitness to practice law. *See Scurry,* 115 Ohio St.3d 201, 2007-Ohio-4796, 874 N.E.2d 521, at ¶ 3, 6, 8, 11. But Scurry also violated two other rules requiring attorneys to maintain a respectful, dignified, and courteous attitude toward courts. *Id.* at ¶ 11.

**{¶ 34}** Compared to Gernert's two aggravating factors, Scurry had just one—a history of prior discipline, *id.* at ¶ 14, and Wineman had none, *Wineman*, 121 Ohio St.3d 614, 2009-Ohio-2005, 906 N.E.2d 1117, at ¶ 13. While Wineman shared several mitigating factors in common with Gernert, both Wineman and Scurry established their diagnosed alcoholism as a mitigating factor and had sustained periods of successful treatment and sobriety by the time of their respective disciplinary hearings. *See Wineman* at ¶ 13, 15; *Scurry* at ¶ 14-17.

**{¶ 35}** In *Kelley*, the attorney committed multiple ethical violations when he abandoned at least 15 clients during a substance-abuse and mental-health crisis. Thanks to the action of another attorney, Kelley's affected clients' cases were

quickly reassigned to other attorneys. Like Gernert, Kelley did not present sufficient evidence to establish his substance-use disorder as a mitigating factor, though he did present evidence that he was participating in treatment and was committed to his recovery despite several relapses. *See Kelley*, 164 Ohio St.3d 443, 2021-Ohio-770, 173 N.E.2d 471, at ¶ 13-14, 17. We suspended Kelley for two years and stayed the entire suspension on conditions to support his recovery that were similar to those we imposed in *Ault*, *Wineman*, and *Scurry*. *See Kelley* at ¶ 19.

{¶ 36} In addition to those decisions imposing conditionally stayed suspensions for substance-use-related misconduct, the board also considered several cases in which we imposed actual suspensions—specifically, two-year suspensions with 18 months conditionally stayed—for alcohol- or drug-related conduct that affected the attorney's professional performance. However, the board distinguished those cases on their facts, noting that they all involved attorney misconduct that caused harm to clients. *See Cincinnati Bar Assn. v. Washington*, 109 Ohio St.3d 308, 2006-Ohio-2423, 847 N.E.2d 435 (during periods of alcohol and cocaine use, attorney billed multiple clients for work he had not performed and converted retainer fees to his own use); *Disciplinary Counsel v. Hoppel*, 129 Ohio St.3d 53, 2011-Ohio-2672, 950 N.E.2d 171 (attorney accepted retainers from multiple clients, used that money to buy cocaine, and neglected his clients' legal matters); *Disciplinary Counsel v. Greco*, 107 Ohio St.3d 155, 2005-Ohio-6045, 837 N.E.2d 369 (while abusing alcohol and illegal drugs, attorney accepted retainers from numerous clients, neglected their cases, lied to conceal his neglect, and was slow to comply with requests for refunds of unearned fees).

{¶ 37} With the exception of the one incident before the Crawford County Municipal Court that resulted in a dismissal for Gernert's failure to prosecute, Gernert's alcoholism does not appear to have affected his practice of law. The board expressed concern that Gernert had not demonstrated a sustained period of

successful treatment and had relapsed two months before his disciplinary hearing. However, citing the applicable mitigating factors—particularly Gernert's voluntary outreach to OLAP, his commitment to working toward sobriety, his improved mental health, and the evidence of his good character and reputation—the board concluded that an actual suspension is not warranted in this case.

{¶ 38} The board therefore recommends that Gernert be suspended from the practice of law for two years, fully stayed on the conditions that he (1) remain in compliance with the terms of his February 13, 2023 suspension and extend that contract through the term of his stayed suspension, (2) complete, in addition to the requirements of Gov.Bar R. X, three hours of continuing legal education ("CLE") focused on alcoholism, substance abuse, or mental-health issues, (3) comply with his court-ordered probation, (4) serve a two-year period of monitored probation in accordance with Gov.Bar R. V(21), and (5) engage in no further misconduct.

### The Court Adopts the Board's Recommended Sanction

{¶ 39} In crafting the appropriate sanctions for attorneys who have engaged in misconduct, " 'we examine each case individually and impose the discipline we believe appropriate based on the unique circumstances of each case.' " *Toledo Bar Assn. v. Hales*, 120 Ohio St.3d 340, 2008-Ohio-6201, 899 N.E.2d 130, ¶ 21, quoting *In re Disciplinary Action Against Ruffenach*, 486 N.W.2d 387, 390 (Minn.1992); *see also* Gov.Bar R. V(13)(A). "We are ever mindful that the primary purpose of the disciplinary process is not to punish the offender but to protect the public from lawyers who are unworthy of the trust and confidence essential to the attorney-client relationship." *Columbus Bar Assn. v. Kiesling*, 125 Ohio St.3d 36, 2010-Ohio-1555, 925 N.E.2d 970, ¶ 44, citing *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 10.

{¶ 40} After thoroughly reviewing the record and our applicable precedent, we agree with the board's assessment that Gernert's misconduct is more serious than the misconduct at issue in *Connor* and *Strauss*. Gernert's misconduct

consisted of two OVI convictions and two separate violations of the terms of probation imposed for his criminal conduct—in contrast to the single driving-under-the-influence incident charged in *Connor*. Similarly, Gernert's alcohol-related misconduct spanned over a year and involved several relapses of an apparent alcohol-use disorder, in contrast to the misconduct at issue in *Strauss*, which occurred over a single drunken night that was apparently unrelated to any substance-use disorder. Regardless, Gernert is aware of his previous shortcomings and the insidious nature of his disorder, and he has voluntarily sought the assistance of a SCRAM device to keep him accountable as he continues to work through AA and counseling on his journey toward recovery.

{¶ 41} We also agree with the board's determination that Gernert's misconduct was less egregious than the misconduct at issue in *Washington*, *Hoppel*, *Greco*, and *Kelley* because Gernert caused no harm to clients through the conversion of client funds, the neglect of clients' legal matters, or the complete abandonment of clients. And, to his credit, Gernert did not appear in court or attempt to represent any clients while he was intoxicated as the attorneys in *Wineman* and *Scurry* had.

{¶ 42} Although Gernert was once intoxicated when he was scheduled to be in court to prosecute a driving-under-suspension case in his capacity as the interim city law director, he called to alert the municipal court that he was unable to proceed. While this conduct resulted in the dismissal of that case, there is no evidence to suggest that Gernert's alcohol-use disorder otherwise impaired his professional performance. On the contrary, the character letters that Gernert submitted—primarily from judges, attorneys, magistrates, and the mayor of Bucyrus—uniformly describe him as a prepared and effective attorney and expressly note that to the authors' knowledge, his alcohol use had not caused any impairment or adverse consequences in the performance of his professional duties.

**{¶ 43}** On these facts, we conclude that a two-year suspension, stayed on the conditions recommended by the board, will both protect the public and support Gernert's recovery.

## CONCLUSION

**{¶ 44}** Accordingly, Brian Nicholas Gernert is hereby suspended from the practice of law in Ohio for two years, fully stayed on the conditions that he (1) remain in compliance with the terms of his February 13, 2023 OLAP contract and extend the term of that contract through the term of the stayed disciplinary suspension, (2) complete, in addition to the requirements of Gov.Bar R. X, three hours of CLE focused on alcoholism, substance abuse, or mental-health issues, (3) comply with the terms of probation imposed in his criminal cases, (4) serve a two-year period of monitored probation in accordance with Gov.Bar R. V(21), and (5) engage in no further misconduct. If Gernert fails to comply with any condition of the stay, the stay will be revoked and he will be required to serve the full two-year suspension. Costs are taxed to Gernert.

Judgment accordingly.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, and DETERS, JJ.

BRUNNER, J., not participating.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Benjamin B. Nelson, Assistant Disciplinary Counsel, for relator.

Coughlan Law Firm, L.L.C., and Jonathan E. Coughlan, for respondent.

_____